GEORGE PRENTISS v. THE ESTATE OF JAMES GIBB ROSS, DECEASED.

*Sale of standing timber—Limitation of time for removal.*

Where a contract for the sale of standing timber, after reciting that the vendor owns the timber, and has the right to cut and remove it during the times thereinafter mentioned, provides for its sale to the vendee, and to his heirs and assigns, forever, and gives him such right as the vendor then has, during the term of one year as to a portion of the timber and five years as to the remainder, *and no longer*, to enter upon the land and cut and remove the timber, the vendee loses all interest in the timber which remains standing at the expiration of the times limited for its removal.

Error to Marquette. (Stone, J.) Argued February 14, 1893. Decided June 16, 1893.

Claim against the estate of decedent.    Claimant brings error.    Affirmed.    The facts are stated in the opinion.

*Ball & Hanscom,* for appellant.

*Moore & Moore* and *T. E. Tarsney,* for appellant, contended:

1. License to take off timber may be extended by parol or by the conduct of the parties, and Mr. Ross waived the right to claim a forfeiture (if any) by giving the notice and seizing and converting the property (including the one-year timber) as the property of Prentiss; citing *Green v. Bennett,* 23 Mich. 464; *Williams v. Flood,* 63 Id. 487.

*Clark & Pearl* and *John D. Conely,* for defendant.

HOOKER, C. J.   On September 28, 1882, the claimant. contracted in writing with James Gibb Ross for the purchase of the pine timber on a large number of parcels of land, agreeing to pay therefor the sum of $65,000, $10,000 of which was paid down.   He gave his two promissory notes, of $27,500 each, payable at the expiration of one and two years, respectively, with interest at the rate of 6 per cent., for the remainder.   He subsequently paid $5,000 on one of these notes.   The payment of the consideration was secured by a "lien on said pine timber for all moneys that might from time to time be due, owing, or accruing due or owing, from" the purchaser, "for or on account of said purchase money, and interest thereon." The writing further provided—

"That, if at any time the sum of $2,000 and over shall be due and payable as aforesaid, the party of the first part, his executors, administrators, or assigns, may, after 30 days' notice, in writing, given to said party of the second part, or left at his last or usual place of business or abode, sell the said pine timber, or any part thereof, by auction or otherwise, as said party of the first part may deem proper, and apply the proceeds thereof towards the payment of such sums as may be due and owing, or accruing due and owing, hereunder, and interest as afore-

said, and to the payment of the costs, charges, and expenses of the sale of the same, and to pay over the surplus," etc.

It further provided—

"That, in case of default in payment of said installments, and interest thereon, when the same shall fall due, the whole of said unpaid sum shall at once become due and payable,   *   *   *   and said party of the first part may, after 30 days' notice, in writing, given to said party of the second part, or left at his last or usual place of business or abode, in addition to his other remedies, have the right to enter in and upon and take possession of said timber, and every part thereof, upon said lands, and to sell the said timber, as he may deem proper, upon giving 30 days' notice in writing, in manner hereinbefore mentioned, and pay over the surplus money," etc.

The land was divided into two classes, from the first of which the timber was to be taken within one year, and from the second within five years, "and no longer."

The claimant let a contract to one Sullivan to take off this timber, and he went upon the land, with the necessary implements, and built the necessary buildings, roads, etc., and commenced the removal of the timber. He cut and removed about 6,000,000 feet, and skidded a large quantity more upon the premises. Claimant did not pay the amount that fell due on September 23, 1883, and two days later Ross gave him notice, in writing, that he should take possession of the pine timber, standing and down, and, at the expiration of 30 days from the date of service of the notice, would proceed to sell it, at auction or otherwise, as he might deem best, and, after applying the proceeds as provided by the contract, would pay the surplus, if there should be any, to the claimant. Ross accordingly sold the timber, both that which was on skids and that standing. He sold the skidded logs to Sullivan for $2.50 per 1,000, i. e. $10,000, the title not to pass until paid for. He subsequently sold the standing timber. The trial judge

held that this contract entitled claimant to two notices, of 30 days' each, and that, inasmuch as only one was given, the sale of the timber was a conversion, and the claimant had a verdict of upwards of $6,000, from which he has appealed.

Claimant's theory was that by taking possession of, and selling, the logs and standing timber, defendant converted it, and was liable for its value.   Defendant claimed—

1. That there was no conversion at all, but, this being decided against him, then that there was no conversion as to the timber standing upon the lands from which the timber was to be cut within one year, by reason of the limitation of time.

2. That the sale of the logs on skids was with the consent of Prentiss, who was willing that Sullivan should have them at this price, that he might be able to realize enough from them to compensate him for getting them out, and, therefore, that there was no conversion.

3. That the value of the standing timber did not exceed his claim against Prentiss.

The first 15 assignments of error may be dismissed with the remark that the rulings related to the question of value of the property converted, and we think no error was committed in these rulings.   They involve no legal question of interest, and a discussion of each is unnecessary.

Assignments 16 and 17 relate to the amount received by Ross, and by him credited to Prentiss, on account of the standing timber.   This testimony bore upon the question of the good faith of Ross, and was properly admitted.

The next three assignments relate to requests to charge. The first and second requests were given, in substance. The third was as follows:

"Under the evidence in this case, you should find the value of all the property, both logs and trees, at the time they were converted, and add interest at 6 per cent. from the time of the conversion; and that amount, less what Mr. Prentiss owed Mr. Ross, with 6 per cent. interest, you will bring in as your verdict."

Inasmuch as there was some evidence of knowledge and consent on the part of claimant to the sale to Sullivan, it was a question for the jury to determine. This request was therefore properly refused.

The court properly instructed the jury that the claimant could not recover the value of the standing timber upon the "one-year" lands, as, by the terms of the contract, he had lost all interest in it before defendant took possession. This disposes of assignments 21 and 34.

A large number of assignments are based upon the charge of the court that if the jury found that the claimant had ratified the sale of the logs to Sullivan, or waived a claim to damages therefor, no damages should be given him for their conversion. Under the proofs this was a proper question for the jury, as above stated, and we think that it was properly submitted to them.

Upon a review of the whole record, we fail to find any error of which the claimant can complain, and the judgment will therefore be affirmed.

The other Justices concurred.